**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

THERESA MULLANEY,                                          Case No. 1:12-cv-638

       Plaintiff,                                          Weber, J.
                                     Bowman, M.J.

       v.

JIM BALLINGER, et al.,

       Defendants.


**REPORT AND RECOMMENDATION**

Pursuant to local practice, this case has been referred to the undersigned magistrate judge for initial consideration and a report and recommendation on all pending motions.

### I.  Background

The background of this case was previously set out in the Court's last Order, but is repeated here for the convenience of the Court.

> The phrase -"don't make a federal case out of it" – while a well-worn idiom, has unique application to the instant litigation.  On April 13, 2012, Theresa Mullaney filed a *pro se* claim against Jim Ballinger in small claims court in Lebanon Municipal Court in Lebanon, Ohio, seeking to recover $425.00.  In her claim, Plaintiff alleges that she hired Mr. Ballinger to provide an elevation certificate acceptable to the Federal Emergency Management Agency ("FEMA"), apparently in connection with her acquisition of flood insurance, but that Mr. Ballinger failed to complete the contracted work.  (Doc. 1-6).  Mr. Ballinger responded to Plaintiff's claim with a counterclaim and cross-claims, seeking the sum of $14,998.75 for damage to his professional reputation.  (Doc. 1-7).  In addition to seeking monetary damages from Plaintiff and her spouse, Ballinger's new claim(s)

named FEMA and more than a dozen additional cross-claim defendants. Ballinger appears to seek injunctive relief on his cross-claims.

On July 10, 2010, and in a second motion filed August 10, 2010, Plaintiff moved to dismiss the counterclaim/cross-claim, in part on grounds that the claims are "unintelligible." (Docs. 1-14, 1-19).   Mr. Ballinger filed no response to Plaintiff's two motions to dismiss, but prior to the state court rendering any decision on those motions, FEMA removed the litigation to this federal Court, citing 28 U.S.C. §§1441, 1442(a) and 1446(a).  Soon after removal to this Court, the newly identified cross-claim defendants began filing additional motions to dismiss, on grounds that Ballinger's pleading is "indecipherable," (Doc. 3 at 4), fails to meet minimum requirements   under Rule 8 (Doc. 5, 11, 18), and fails to state a claim under Rule 12(b)(6)  (Docs. 6, 11, 18).  In the alternative, several of the cross-claim defendants seek a more definite statement of Ballinger's claims.

(Doc. 23).  Ballinger is the only party who has entered an appearance and remains *pro se* in this Court.

In his state court "Cross Claim and Countersuit," Ballinger specifically identified the following individuals and entities as defendants against whom he was making claims: (1) Federal Emergency Management Agency ("FEMA"); (2) Luis V. Rodriguez; (3) Darren Wall; (4) David N. Bascom; (5) Nate Mullaney; (6) International Business Machines; (7) Peter DeMeo; (8) Christina Bassis; (9) PNC Bank; (10) PNC Bank – Insurance Division; (11)  Corelogic; (12) Atkins Global; (13) Stantec; (14) Brooks Snyder (and wife); and (15) Theresa Mullaney.  Following removal to this Court, counsel for fourteen of the fifteen cross-claim Defendants[1]  filed six separate motions to dismiss. Ballinger failed to respond to any of those motions to dismiss, but did file a document

---

[1]The first four cross-Defendants, all of whom are associated with FEMA, are jointly represented. The original Plaintiff Theresa Mullaney, and her spouse, Nate Mullaney, obtained counsel after Defendant Mullaney filed a counterclaim against them.  IBM, and two of its employees (DeMeo and Bassis), are jointly represented, as are the two related PNC entities.  Stantec is represented by its own counsel.  The only Defendant that has not moved to dismiss is Atkins Global, an entity that does not appear to have been properly served.

captioned as a "Notice Opposing Removal by FEMA," which the undersigned construed as a motion to remand to state court.

Because Ballinger did not initially respond to the multiple motions to dismiss, the undersigned directed him to "**SHOW CAUSE**, in writing on or before **November 8, 2012**," why all motions to dismiss and/or for a more definite statement should not be "granted for the reasons stated." (Doc. 23). In the same order, the court permitted all other parties to respond to Ballinger's construed motion to remand to state court. The time for briefing has now expired for all pending motions, with the exception of two recently filed motions to strike a new pleading (Docs. 3, 11). For the reasons that follow, I recommend that this litigation be dismissed from federal court, and that Plaintiff's original state court claim be remanded to state court.

## II. Analysis

### A. Defendant Ballinger's Construed Motion to Remand (Docs. 16, 24) and Response to Order to Show Cause (Doc. 27)

As indicated, Ballinger's "Notice Opposing Removal by FEMA from Lebanon to U.S. District Court," (Doc. 16), was construed as a motion to remand to state court. Since the Court's last Order, Ballinger also has filed a "motion to transfer," (*see* Doc. 24). Last, Ballinger filed a "response to order to show cause" that explains that he "does not concede his case has ever left Lebanon Municipal [court]." (Doc. 27 at 1).

FEMA and its employees ("Federal Defendants") have filed a response in opposition to Ballinger's construed motion to remand. The Federal Defendants assert that this case was properly removed pursuant to 28 U.S.C. §§1441, 1442(a)(1) and 1446(a), because Ballinger's cross-claims assert claims against a United States agency

and employees acting in the performance of their duties for that agency.  Ballinger's pleading seeks both injunctive relief and monetary damages.[2]

The Court concludes that removal to this Court is proper under 28 U.S.C. §1442(a)(1).  *See, e.g., Oklahoma Banks Ass'n v. Home Sav. and Loan Ass'n*, 625 F. Supp.993, 998 (W.D. Okla. 1984)(holding that the fact that a federal officer is a third party defendant is no bar to his right to removal of not only the third party action but also the primary action, collecting cases).  Having determined that jurisdiction exists under §1442(a)(1), the undersigned finds no need to discuss at length whether jurisdiction also exists under 28 U.S.C. §§1441 or 1446(a).  *See Ohio v. Doe*, 433 F.2d 502 (6th Cir. 2006)(discussing limits on removal of ancillary proceedings by third party defendants under §1441).  It is sufficient to note that the Sixth Circuit's analysis of §1442(a)(1) in *Doe* appears distinguishable from the facts presented in this case.  In *Doe*, removal was disfavored in part because the state court case had concluded; all that remained for removal was enforcement of a judgment requiring a federal public defender to comply with a subpoena compelling her to testify in a state grand jury investigation.  By contrast, here the claims against the Federal Defendants are sufficiently distinct, and the litigation has just begun, such that the basis for removal jurisdiction is clearer.  Therefore, Ballinger's construed motion to remand and his motion to transfer (Docs. 16, 24) should be denied, except for Plaintiff's original claim against Ballinger, as discussed below.

---

[2]Ballinger represents that he does not seek monetary damages against the Federal Defendants, although his pleading remains ambiguous.  However, the issue of whether Ballinger seeks monetary damages is not dispositive of the jurisdictional question presented.

**B. Defendant Ballinger's "Artful Complaint" and Response to Pending Motions to Dismiss, and Defendants' Motions to Strike (Docs. 26, 30, 31)**

In its last Order, the Court noted that Ballinger had failed to respond to multiple motions to dismiss. Because Ballinger proceeds *pro se*, the Court directed him to "show cause" why the motions should not be granted. Instead of complying with that order, Ballinger filed what appears to be an amended complaint. (*See* Doc. 24, "Artful Complaint and Motion to transfer"). While difficult to decipher, the new "Artful Complaint" portion of this pleading appears to add new claims and parties.[3] Three cross-Defendants to date have moved to strike the pleading as procedurally improper.

The motions to strike could, and probably should, be granted for the reasons stated in the cross-Defendants' motions. Ballinger filed his new "Complaint" without obtaining consent of any party, and without leave of this Court. Pursuant to both Rule 15(a)(1) and Rule 15(a)(2), Fed. R. Civ. P., Ballinger's attempt to amend his pleading at this date is untimely and procedurally improper. More importantly, for the reasons stated in the pending motions to dismiss, the entirety of Ballinger's claims are subject to immediate dismissal and the deficiencies would not be cured by the proposed amendment.

The only reason the undersigned does not recommend striking Ballinger's tendered "Artful Complaint" is because this recommendation is being filed without awaiting expiration of Ballinger's time to respond to the motions to strike. Given the lack

---

[3]For example, Ballinger's "Artful Complaint" lists as additional defendants to his cross-claims, "Top Ten Insurance Companies" which "are directly connected to clients that Ballinger has worked with," as well as "[s]uch other and additional companies having flood insurance that is forced on a [sic] unwary public." (Doc. 24 at 6). In addition, Ballinger now lists ten individuals and entities as new third party Plaintiffs. (Doc. 24 at 7). Two of the new Plaintiffs are identified as "Deceased." The entities range from the "Virginia State Board" (the type of Board is not specified) to the "Golden Lamb" restaurant. (*Id.*). None of the new Plaintiffs is a signatory to the new complaint.

of full briefing, it is judicially prudent to explain the recommendation to grant all pending motions to dismiss even if the tendered amendment is not wholly stricken from the record. Therefore, for each of the pending motions to dismiss, the undersigned will briefly discuss the improperly tendered amendment.

### C. Motions to Dismiss for Failure to State a Claim

#### 1. Legal Standard

Rule 8(a)(2), Fed. R. Civ. P., requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In recent years, the Supreme Court has brought greater focus to that pleading standard, holding first in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007) that a previously well-worn formulation that generally prevented dismissal, unless no set of facts could offer relief, "has earned its retirement." *Twombly* ushered in a new standard, whereby a complaint was required to contain facts sufficient to "state a claim to relief that is plausible on its face" *Id*. at 1974. In *Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court further explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949.

Under *Iqbal*, a trial court evaluating a complaint must cipher out "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" from legal conclusions that are supported by factual allegations. *Id*. The first step is to identify the elements of the claim, in order to determine which allegations are mere legal conclusions, as opposed to factual allegations entitled to the "assumption of truth." *Id*. at 1951 ("We begin...by identifying the allegations in the complaint that are not entitled to

the assumption of truth").  To survive a Rule 12(b)(6) motion to dismiss, a would-be plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 127 S. Ct. at 1965.

### 2.  The Motions of Theresa Mullaney and Nate Mullaney (Docs. 1-14, 1-19)

The motions to dismiss by the Mullaneys were filed pursuant to Ohio Civil Rule 12(b)(6), which parallels the same Federal Rule of Civil Procedure.  The Mullaneys argue that Ballinger's counterclaim and cross-claim against them should be dismissed for failure to state a claim as "unintelligible."  The Court agrees.

In his original answer and counterclaim/cross-claim, Ballinger alleged that Nate Mullaney was the "[a]pparent husband of Terri Jones who has dower interests in selling the property at 509 Katherine [A]ve., or resolving the Banks [sic] requirement of placing outrageous costs for alleged flood insurance."  (Doc. 1-1).  He further alleges that Theresa Mullaney (whom he alternately identifies as Terri or Theresa Jones), was his "original client [who] made arrangements by a [sic] oral contract on certain property…needing a 'flood insurance certificate.'"  (*Id.*).  Ballinger alleges that "[a]ccording to the oral contract he was correctly compensated" for his work in the amount of $375.00.  (*Id.* at 3).  With no other allegations asserted against the Mullaneys, Ballinger seeks "damages in the amount of $14,998.75 for damages to Ballinger's Engineering reputation and his ability to earn a living."  Additional documents filed by Ballinger in state court simply reiterate the original answer/counterclaim and cross-claim, and fail to include any additional allegations against the Mullaneys that would support any type of breach of contract claim against them.  (*See* Docs. 1-1, 1-7, 1-13).

Ballinger did not respond to Mullaneys' motion to dismiss for failure to state a claim in state court, and neither his "Artful Complaint" nor his response to this Court's show cause order provide any additional details that would support any discernible claim against the Mullaneys.  Therefore, the Mullaneys' motions to dismiss should be granted.

### 3.  The Motion of the IBM Defendants (Doc. 3)

Ballinger's pleading and related documents in state court fail to make any specific allegation against International Business Machines or its employees ("IBM Defendants").  In general, Ballinger asserts that he is naming various cross-claim defendants so that they can "be allowed the hospitality to come play in the City of Lebanon's sandbox."  (Doc. 1-1 at 3).  After quoting from Shakespeare's "Julius Caesar," Ballinger explains that although he is unsure "whether the Colossus is FEMA, Corelogic, AtkinsGlobal, AEEC, Michael Baker, or the Wizard of Oz (FEMA's Luis Rodriguez)," his "first task is to serve all Parties.  Then we will allow them, through discovery, to put some skin in the game."  (*Id.*).

Naming parties in a lawsuit for the sole purpose of requiring them to participate in civil discovery, in the absence of any allegations against them, not only fails to state a claim under Rule 8, but strongly suggests a violation of Rule 11 under both the Ohio Rules of Civil Procedure and the parallel Federal Rules.  *See* Fed. R. Civ. P. 11.  The IBM Defendants also contend that Ballinger's claims amount to an abuse of process, a separate tort recognized under Ohio law. S*ee Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 117-118 (Ohio 1994)(discussing elements of abuse of process and malicious civil prosecution claims).  As the IBM Defendants and other

8

parties have noted, Ballinger's claims are nearly indecipherable.[4] Based upon Ballinger's failure to allege any conduct or omission by any of the three IBM Defendants, their motion to dismiss for failure to state a claim should be granted.

Ballinger's tendered "Artful Complaint" does not cure the fatal deficiencies, to the extent that pleading is considered. The only additional references in the tendered pleading that pertain to the IBM defendants are: (1) that two IBM employees were "working with IBM database retaining records of LOPMR, LOMA, etc." and (2) inclusion of a claim for injunctive relief to seek an "injunction against FIRM their subcontracting database (IBM) that is allowing Insurance companies to permit banks to place forced flood insurance on an unknowing public." (Doc. 24 at 5, 13). Neither of these statements provide a legal basis for relief.

### 4. **Stantec's Motion to Dismiss (Doc. 5)**

The Court can add little to Stantec's description of Ballinger's claims against it as "far from clear." As best that Stantec and the undersigned can discern, Ballinger alleges that Stantec was in some way involved in raising the Base Flood Elevations for homes on Katherine Drive, which apparently impacted the Mullaneys' need for flood insurance. However, Ballinger does not contend that he personally was required to procure flood insurance, or that he himself lives on Katherine Drive. In fact, there is no claim of any contractual privity between Ballinger and Stantec, nor is there any other apparent basis for any legal claim against Stantec. In order to state a claim, the plaintiff

---

[4]For example, Ballinger complains that policies instituted by FEMA have caused an increase in the foreclosure rate, which in turn has led his "handball/racquetball to diminish so as to prevent him from being the top player at the YMCA." Ballinger states: "This downfall of civilization is so traumatizing that Plaintiff [Ballinger] cannot function professionally and personally," and asserts that "Life's pleasures have been taken away from [Ballinger] because of clients having to deal with FEMA.") (Cross-Claim and Counter Suit at ¶8).

(in this context Ballinger) must allege something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" that offers no "more than a sheer possibility" that the defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678.  Based upon the lack of any supporting facts that would lead to any identifiable claim against Stantec, Stantec's motion to dismiss also should be granted.

The tendered "Artful Complaint" does not change this analysis.  Although Ballinger more clearly identifies Defendant Stantec as an "Engineering business [that] raised the Base Flood Elevation causing 'forced insurance' to be maintained for all of Katherine Dr. drainage area," (Doc. 24 at 7), that allegation does not state a claim by Ballinger against Stantec.

### 5.  The Motion of the PNC Bank Entities (Doc. 6)

Ballinger's original "Cross Claim and Counter Suit" identifies "National City Bank – now PNC Bank" as the "holder of a purchase money mortgage" issued to the Mullaneys, and "PNC Bank – Insurance Division"[5] as a "holder of flood insurance." (Doc. 1-1 at 5; Doc.1-13 at 3).  Other than identifying these two entities as parties, Ballinger's pleading contains no allegations against either PNC entity at all.  The only possible reference is an apparently mistyped one, wherein Ballinger alleges:

> As a proximate and direct result of the Mullaney oral contract, and due to Katrina forcing FEMA to rethink their policies and align themselves with the large banks (PMC) [sic] together with forming a coalition with Insurance Companies (State Farm et al) the entire "FEMA FLOOD and perfect storm of forced insurance piling on the GREAT RECESSION" has caused Plaintiff's handball/racquetball to diminish so as to prevent him from being the top player at the YMCA.

---

[5]While it has no bearing on the motion to dismiss, counsel for the PNC Defendants represents that "PNC Bank –Insurance Division" is not a recognized, separate legal entity from PNC Bank, N.A. PNC Bank, N.A. also is incorrectly identified as "National City Bank-Now PNC Bank."

(Doc. 1-1 at 7-8).  Because this allegation cannot be construed as a plausible claim against the PNC entities, the motion of the PNC Defendants to dismiss all claims against them should be granted.

As with other Defendants, Ballinger's tendered "Artful Complaint" lends no clarity to his claims, notwithstanding a fleeting reference to FEMA's purported knowledge that "the ten largest banks have placed 'forced flood insurance' on the citizens of the United States.'" (Doc. 24 at ¶12).  The "Artful Complaint" simply does not state any cognizable claim against the PNC entities under any discernable legal theory.

### 6. The Motion of Corelogic Flood Services, LLC (Doc. 11)

Defendant CoreLogic Flood Services, LLC ("CoreLogic")[6] also persuasively argues that Ballinger's allegations are insufficient to state a legal claim under Rule 12(b)(6).  Other than identifying CoreLogic as one of the myriad "parties now become defendants," Ballinger includes no specific factual allegations against CoreLogic at all. Ballinger does identify CoreLogic as a "Hydra-Headed monster that has a contract with FEMA…" but that lone allegation – to the extent that it might liberally be construed as "factual," rather than merely fanciful and conclusory, is clearly insufficient to state any viable claim.  The statement does nothing to explain any privity of contract between Ballinger and CoreLogic, or any other plausible basis for relief.

In his tendered "Artful Complaint," Ballinger adds allegations that "Terri Jones" (Mullaney) "contacted CoreLogic gaining the status of Case No. and taking away the ability of Engineer (Agent) to act on her behalf.  Core Logic '…only deal(s) with whoever

---

[6]Counsel for CoreLogic points out that CoreLogic's name also has been incorrectly identified.

files the case.'"  (Doc. 24 at 9, ¶1).  Ballinger further alleges that an agent of FEMA "knew or should have known, that Corelogic was acting on erroneous information and engineering data." (*Id.* at ¶6).  Once again, these minimal additional allegations offer no fathomable basis for a legal claim that would be sufficient to defeat Defendant's pending motion to dismiss.

### 7.  The Motion of Brooks Snyder (Doc. 18)

While the Court is sorely tempted to simply state "see above," the motion of Brooks Snyder (and possibly of his/her wife),[7] warrants at least a sentence or two of discussion.  As with most other Defendants, Ballinger's pleading contains no allegations at all against the mysterious Brooks Snyder.  Nor does his tendered "Artful Complaint" add any allegations concerning Snyder and/or that person's spouse.  Therefore, the motion to dismiss should be granted.

### 8.  The Motion of the Federal Defendants (Doc. 22)

Last but not least, the Court turns to the motion of the Federal Defendants, comprised of FEMA and its employees.  If FEMA is not Ballinger's number one nemesis, there is no doubt it is very high on his list.  Ballinger blames FEMA not only for ruining his handball/racquetball standing, but also for causing damage to his surveying business, and for causing him such emotional distress that he is prevented from enjoying his grandchildren, friends, and other of life's "usual functions."  (Doc. 1-1 at ¶9).

---

[7]Ballinger's pleading identifies this Defendant as "Brooks Snyder –Wife," leaving this Court to wonder whether "Brooks," a name that is somewhat gender-neutral, is a married female or a married male, or whether Ballinger intended to identify not one but two individual defendants.  (Doc. 1-13 at 4). The docket sheet of this Court reflects only Brooks Snyder.

Ballinger's obvious enmity aside, however, his pleading fails to include specific factual allegations against the Federal Defendants that would support a legal claim sufficient to survive their motion to dismiss.  Ballinger has no standing to bring claims against FEMA on behalf of former clients whom he alleges either have been foreclosed upon, or who face the possibility of foreclosure, based upon FEMA's alleged post-Katrina change in flood insurance standards.  Similarly, Ballinger's assertion that it is the duty of "governments of the United States, of the several States and their political subdivision, and of Indian Tribes, to ensure older people are able to "[retire] in health, honor, dignity – after years of contribution to the economy," (Doc. 1-1 at ¶9), is insufficient to state a claim against FEMA.

While Ballinger does include additional allegations against FEMA in his tendered "Artful Complaint," none of those allegations survive *Iqbal*'s "plausibility" test.  For example, Ballinger alleges that FEMA "has breached each and every contract, and the laws of Ohio, by pitting his [Ballinger's] licensing board against his professional engineering license and fraudulently requiring him to certify to data that his Board says he is not qualified or licensed to.  Architects are similarly restricted."  (Doc. 24 at 8).  This allegation does not state any claim under the *Iqbal* standard, because it merely states Ballinger's legal conclusion (that FEMA has breached many contracts and violated Ohio law) without providing factual details that would be entitled to the "assumption of truth." *Id.,* 129 S.Ct. at 1951.

Ballinger's new allegations against Luis Rodriguez fail to state a claim for similar reasons.  Ballinger complains that Defendant Rodriguez "holds a [sic] engineering license in the State of Virginia, and has no Land Surveyors License in any State" and

that documents authenticated by FEMA "defy the laws of Ohio/Virginia and professional engineering practice." (Doc. 24 at 10). In addition, Ballinger alleges that "[i]n defiance of Ohio Revised Code 4733, and a similar law in the State of Virginia, FEMA and it's [sic] employee Rodriguez are with malicious intent causing harm to the citizens of Lebanon, and the U.S.A." (*Id.*). Multiple statutes relating to Professional Engineers and Professional Surveyors fall within Ohio Revised Code Chapter 4733. It unclear what statute Ballinger is alleging was violated by the FEMA and/or Rodriguez, or whether Ohio (or Virginia) would recognize a private right of action for whatever violation is claimed. Regardless, the allegations are so lacking in factual detail and plausibility that they do not survive the Federal Defendants' motion to dismiss even if the tendered amended pleading is considered.

### 9. *Sua Sponte* Dismissal of Defendant Atkins Global

The cross claim Defendant identified by Ballinger as "Atkins Global" does not appear to have been properly served. As a result, Atkins Global did not appear in state court and has made no appearance in this Court.

In his original pleading, Ballinger describes Atkins Global as a cross-claim defendant that "Lost their contract with FEMA to head the Clearinghouse. Maintains a contract checking elevation certificates." (Doc. 1-1 at 5). Ballinger includes no other references to Atkins Global in either his original pleading or amendments thereto, including his tendered "Artful Complaint." (*See* Doc. 24). Similar to other cross-claim Defendants, Atkins Global clearly would be entitled to dismissal for failure to state a claim. However, in light of Ballinger's failure to comply with his obligation to perfect

14

service on Atkins Global, the undersigned recommends dismissal of Atkins Global based upon the failure of timely service.

### D.  Remand to State Court

Having concluded that the entirety of Ballinger's "Counterclaim and Cross Claims" are subject to dismissal, resulting in the dismissal of all cross-claim Defendants as well as the dismissal of Ballinger's counterclaim against the Mullaneys, this Court is left to consider whether it should retain jurisdiction of the original breach of contract claim filed by Plaintiff Mullaney against Defendant Ballinger for the sum of $425.00.   In determining whether to retain jurisdiction, the Court considers that Plaintiff initiated suit in small claims court in Ohio, that this R&R recommends dismissal of the only claims that provide a basis for federal jurisdiction, and that even Defendant Ballinger prefers for this case to remanded to state court.  Because the sole remaining breach of contract claim is between two parties who prefer to remain in state court, and because the interests of judicial economy are better served by remand, the undersigned recommends that Plaintiff's claim for $425.00 in damages against Defendant Ballinger be remanded back to state court.

### III.  Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:**

1.  Defendant Ballinger's previously construed motion to remand to state court, as well as his motion to transfer (Docs. 16, 24) should be **DENIED**, except that this Court should decline to retain jurisdiction over, and should **REMAND** to state court, Plaintiff Mullaney's original breach of contract claim against Defendant Ballinger;

2.  The motions to dismiss of all parties appearing before this Court (Docs. 1-14,

1-19, 3, 5, 6, 11, 18, 22) should be **GRANTED**, with Ballinger's counterclaim and cross-claim against the Mullaneys, as well as all cross-claims against all other Defendants, to be **DISMISSED WITH PREJUDICE** for failure to state a claim;

3.   Defendant Atkins Global should be **DISMISSED** *sua sponte* based upon Plaintiff's failure to perfect service on that cross-claim Defendant, or alternatively, for failure to state a claim;

4.   To the extent that the tendered "Artful Complaint" has been considered by the undersigned in the context of the pending motions to dismiss, the motions to strike Ballinger's tendered pleading (Docs. 26, 30, 31) should be **DENIED as moot**, notwithstanding the strong legal merits of those motions;

5.   The alternative motions for a more definite statement filed by the IBM Defendants and by Stantec (Docs. 3, 5) should be **DENIED as moot**;

6.   This case should be closed and terminated from the docket of this Court.


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

THERESA MULLANEY,                                    Case No. 1:12-cv-638

        Plaintiff,                                    Weber, J.
                                             Bowman, M.J.

      v.

JIM BALLINGER, et al.,

        Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).